## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Basil Benna Dudley, | Case No. 16-cv-446 (JRT/TNL) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Minnesota, | |
| Respondent. | |

Basil Benna Dudley, OID No. 242462, MCF–Faribault, 1101 Linden Lane, Faribault, MN 55021 (*pro se* Petitioner); and

Peter R. Marker, Assistant Ramsey County Attorney, Ramsey County Attorney's Office, 345 Wabasha Street North, Suite 120, St. Paul, MN 55102 (for Respondent).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus, (ECF No. 1), and Respondent's Motion to Dismiss, (ECF No. 15).[1] This action has been referred to the undersigned for a report and recommendation to the Honorable John R. Tunheim, Chief Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the petition be dismissed.

---

[1] Also before the Court are Dudley's Motion to Order Court Un-Transcribed Transcript of Plea Hearing and Sentencing, (ECF No. 21), and Dudley's Motion to Stay, (ECF No. 23). These motions were filed well after Respondent's Motion to Dismiss. For purposes of efficiency and completeness, these motions are addressed herein rather than through separate order.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

### A.  State District Court

Petitioner Basil Benna Dudley was charged by complaint in Ramsey County District Court on February 28, 2013,

> with three counts of first-degree criminal sexual conduct after a 12–year– old girl told police that Dudley had been sexually assaulting her on a monthly basis for about three years and the Minnesota Bureau of Criminal Apprehension matched Dudley's DNA with DNA taken from semen found on the girl's sheets.

*State of Minnesota v. Dudley*, No. A14–0188, 2014 WL 4798939, at \*1 (Minn. Ct. App. Sept. 29, 2014), *review denied* (Minn. Nov. 25, 2014); (*see* ECF No. 17, Ex. 8, at 2). Dudley "agreed to plead guilty to one count of first-degree criminal sexual conduct in return for the state's dismissal of the other two counts," with further agreement that sentencing would be left to the discretion of the district court. *Dudley*, 2014 WL 4798939, at \*1. Pursuant to this agreement, Dudley pleaded guilty on August 1, 2013 and moved for a downward dispositional departure. *Id.*; (*see* ECF No. 17, Ex. 8, at 2). On November 8, 2013, the state district court conducted a sentencing hearing where it heard arguments regarding the motion from Dudley's attorney and the state, as well as a statement from Dudley. *Dudley*, 2014 WL 4798939, at \*1. The district court denied Dudley's motion for a dispositional departure to probation, and sentenced him to 144 months imprisonment. *Id.*

### B.  Minnesota Court of Appeals

On January 30, 2014, Dudley appealed his conviction to the Minnesota Court of Appeals with the assistance of counsel. *Dudley*, 2014 WL 4798939; (*see* ECF No. 17, Ex.

8, at 3). On appeal, Dudley asserted that "the district court abused its discretion when it considered its distaste for offenses like [his] and its unhappiness to determine whether substantial and compelling reasons existed to grant [his] requested dispositional departure." *Dudley*, 2014 WL 4798939, at \*2 (alterations in original); (*see* ECF No. 17, Ex. 4, at 3). Dudley argued that his "'case should be remanded to the district court for a new sentencing hearing for reconsideration of the departure question' because the district court 'analyzed the request for a departure without consideration of the *Trog* factors when the court denied the dispositional departure motion.'" *Dudley*, 2014 WL 4798939, at \*2. Dudley asserted that the district court did not conduct a proper *Trog* analysis[2] and "suggest[ed] that it was improper for the district court 'to focus its decision on the court's own inability to understand why someone could offend in such a manner and the court's distaste for cases such as [his].'" *Id.*

The Minnesota Court of Appeals was "satisfied that the district court carefully evaluated all of the information that was presented regarding the departure motion, which consisted of the presentence-investigation report, the parties' oral arguments, and Dudley's statement." *Id.* at \*3. With this information, the Minnesota Court of Appeals noted, the "district court ultimately concluded there were no substantial and compelling reasons to support a departure." *Id.* Thus, the Minnesota Court of Appeals held that the

---

[2] *Trog* held that sentencing courts should consider a variety of factors when determining "whether a defendant is particularly suitable to individualized treatment in a probationary setting," including the offender's "age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State of Minnesota v. Trog,* 323 N.W.2d 28, 31 (Minn. 1982).

"district court properly exercised its discretion when ruling on Dudley's motion for a dispositional departure." *Id.*

Dudley also filed a two-page *pro se* brief. (ECF No. 17, Ex. 5). The Minnesota Court of Appeals addressed several, but not all, of the various *pro se* arguments raised by Dudley on appeal. First, the court addressed Dudley's argument that

> he "pled 'guilty' under false circumstances." Specifically, he asserts that he "was misled to believe that [he] would be pleading to a lesser charge of Second (2nd) degree [criminal sexual conduct]," and that he "was told by [his] attorney that [he] would be granted a downward departure upon [his] plea of 'guilty' in which [he] would receive no more than one (1) year in the workhouse, and no less than a sentence of probation." He also asserts that he is "innocent of any and all charges against [him]."

*Dudley*, 2014 WL 4798939, at *3 (alterations in original); (ECF No. 17, Ex. 5, at 2). The court noted Dudley cited no legal authority and offered no legal argument in support of his assertions, thereby finding that such claims were "waived unless prejudicial error is obvious on mere inspection." *Dudley*, 2014 WL 4798939, at *3 (quotation and citation omitted). Under this standard of review, the court found no obvious prejudicial error where the "the record belie[d] Dudley's assertions." *Id.*

Second, Dudley asserted "that his 'attorney was very negligent and incompetent to handle and defend this instant case.'" *Id.* at *4; (ECF No. 17, Ex. 5, at 2). Specifically, Dudley asserted that his attorney: (1) did not corroborate certain information via witnesses provided by Dudley; (2) did not challenge or rebut any of the statements used against Dudley; (3) never discussed the victim's letter with Dudley prior to sentencing; (4) did not challenge "false allegations" contained in the presentence investigation report; and (5) did not challenge any of the DNA findings. (ECF No. 17, Ex. 5, at 2–3).

Moreover, Dudley asserts his attorney and the judge had "personal dislikes for each other," making the judge prejudicial against Dudley. (ECF No. 17, Ex. 5, at 2). The Minnesota Court of Appeals found that while Dudley made "a number of allegations regarding his attorney's performance," he did "not establish that his attorney's performance fell below an objective standard of reasonableness." *Dudley*, 2014 WL 4798939, at *4.

Dudley made several other arguments in his *pro se* appellate brief. Dudley challenged the district judge's ability to make a statement during sentencing that Dudley had made a conscious decision to commit the acts he committed, where the district judge "does NOT have a degree in psychology." (ECF No. 17, Ex. 5, at 3) (emphasis in original). Dudley asserted he is "innocent of any and all charges against [him]" and that he "entered a plea of 'guilty' based upon false promises of a downward departure that were made to [him], and also the plea of 'guilty' was made under threat, duress and coer[c]ion" rendering it void. (ECF No. 17, Ex. 5, at 3). Dudley thus purported to withdraw his guilty plea. (ECF No. 17, Ex. 5, at 3). The Minnesota Court of Appeals rejected these arguments without further analysis. *Dudley*, 2014 WL 4798939, at *4 ("In sum, we have considered Dudley's pro se arguments and conclude that none provides a basis for relief.").

### C. Minnesota Supreme Court

Petitioner sought review by the Minnesota Supreme Court on October 22, 2014. (ECF No. 17, Ex. 8). The only ground for appeal raised in the Minnesota Supreme Court was whether "the district court abuse[d] its discretion when it denied [Dudley's] motion

for a dispositional departure when it indicated its personal distaste for crimes like [Dudley's], and did not deliberately consider the *Trog* factors for a dispositional departure and apply them to [Dudley's] case[.]" (ECF No. 17, Ex. 8, at 2). The Minnesota Supreme Court denied review on November 25, 2014. (*See* ECF No. 17, Ex. 9). Judgment issued on December 4, 2014, affirming the decision of the Ramsey County District Court. (*See* ECF No. 17, Ex. 10).

### D. Federal Habeas Petition

On February 23, 2016, Dudley submitted the instant habeas petition. (Pet., ECF No. 1). Dudley asserts four grounds for relief in his habeas petition: (1) ineffective assistance of counsel; (2) abuse of discretion; (3) medical health; and (4) coercion. (Pet., at 10, 15, 20, 24). While these are presented as four separate claims, they are factually intertwined.

For the ineffective assistance of counsel claim, Dudley asserts his trial attorney was ineffective for: (1) "not informing [Dudley] of his possibility of acquittal due to hearsay and the lack of physical evidence;" (2) "not thoroughly investigating relevant evidence;" (3) "[n]ot requesting a competency test when it was evident;" and (4) "neglecting the fact that during the entire pleading process Mr. Dudley was under the influence of medication." (Pet., at 10–12). Dudley asserts that had his attorney performed any of the above, he would have proceeded to trial rather than accept the plea agreement. (Pet., at 10–12).

For his abuse of discretion claim, Dudley challenges the fact the trial judge

let Mr. Dudley enter plea of guilty knowing that he was (1) incapable of understanding the charges against him[;] (2)[] that at the time he was under the influence of Celexa (a medicine known to cause loss of memory, confusion, etc.) . . .[;] (3) . . . that at least once during the pre-sentencing investigation Mr. Dudley did not want to accept the plea offered by the state . . .[;] and (4) that [Dudley] did not understand the proceedings during the plea hearing nor sentencing.

(Pet., at 16). Dudley asserts his Fourteenth Amendment right to due process was violated at this plea hearing as a result. (Pet., at 17).

Regarding the medical health claim, Dudley asserts that his plea was invalid because he was taking Celexa, an anti-depressant medication, at the time he entered his guilty plea. (Pet., at 20–21). Dudley asserts that the state district court should have *sua sponte* questioned Dudley's competency when he "gave 'monosyllabic' responses to the sentencing courts [sic] questions" and when he "was given a chance to speak and he went on and on making no sense of his words . . . ." (Pet., at 20–21).

Finally, in the coercion claim, Dudley asserts his "plea agreement was clearly a result of ignorance, incomprehension, coercion, and inducements." (Pet., at 24). Essentially, Dudley asserts he was coerced into accepting a plea by his attorney, the prosecutor, and the presiding judge, because they all knew he was taking Celexa. (Pet., at 24). Dudley points to his previous argument that there was no physical evidence in support of the charged crimes and asserts the victim's letter to the sentencing court was "so articulated that it's safe to assume that the victim (A 12 year old girl) herself did not in fact type the letter." (Pet., at 25).

In short, Dudley appears to be challenging his conviction on the grounds that he misunderstood his plea agreement. Dudley argues that he understood he faced a single

outcome following pleading guilty: that the district court would accept his motion for a downward departure, thereby sentencing him to probation and treatment, rather than imprisonment. Given this alleged misunderstanding, Dudley asserts his counsel was ineffective in providing legal representation and asserts the district court and his counsel should have known he was incompetent or affected in some manner by his anti-depressant medication. Throughout these arguments, Dudley also weaves in claims that the victim lied, that he could not have been convicted based on the evidence produced, and that evidence and court records may have been altered. With all of this, Dudley asserts that his conviction is so tainted that the only recourse is for this Court to reverse his conviction and permit him to withdraw his guilty plea.

Respondent moved to dismiss on the grounds that Dudley's claims are all procedurally defaulted because he has failed to exhaust state remedies. (Mem. in Supp. of Mot. to Dismiss, ECF No. 16). Dudley did not reply to the motion dismiss.[3]

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 is used by state prisoners alleging they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant habeas

---

[3] Following the filing of Respondent's Motion to Dismiss, Dudley filed with this Court: the Minnesota Supreme Court's order denying further review, (ECF No. 20), approximately one month following the motion to dismiss; a motion for transcripts, (ECF No. 21), and a letter indicating a change of address, (ECF No. 22), about two months after the motion to dismiss was filed; and a motion to stay this case to have his petition reviewed, (ECF No. 23), over eight months after the motion to dismiss. None of these filings provide any substantive response to the motion to dismiss.

Prior to Respondent's Motion to Dismiss being filed, Dudley sent a letter to the Court that states, in relevant part: " . . . I have exhausted all state remedies . . . ." (ECF No. 11, at 1).

corpus relief to a state prisoner on any issue decided on the merits by a state court unless the proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state prisoner "must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To be fairly presented 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999)). However, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62). Additionally, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to

9

find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32.

If a habeas petition contains claims that have not been exhausted in the state courts, the reviewing court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citing *Harris v. Reed*, 489 U.S. 255, 268–70 (1989) (O'Connor, J., concurring)). "A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Thus, "a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Clemons*, 381 F.3d at 750 (citing *Murray v. Carrier*, 477 U.S. 478, 493–96 (1986)).

For the federal court to enforce a state procedural bar, it must be clear that the state court would hold the claim procedurally barred. *Clemons*, 381 F.3d at 750. The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merit of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980). Minnesota law provides that once the petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for

postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). "Claims are considered 'known' [under the *Knaffla* rule] if they were available after trial and could have been raised on direct appeal." *Vann v. Smith*, Case No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015) (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006)).

### A.  Ineffective Assistance of Counsel Claim

In his *pro se* brief to the Minnesota Court of Appeals, Dudley raised various arguments that fall under an ineffective assistance of counsel claim. The Minnesota Court of Appeals found that Dudley did "not establish that his attorney's performance fell below an objective standard of reasonableness." *Dudley*, 2014 WL 4798939, at *4. Dudley raised no claim related to ineffective assistance of counsel when appealing to the Minnesota Supreme Court.

Dudley has failed to exhaust state remedies on his ineffective assistance of counsel claim because he did not "'fairly present' his claim in each appropriate state court . . . ." *Baldwin*, 541 U.S. at 29. Dudley raised a single claim when appealing to the Minnesota Supreme Court: whether the state district judge abused her discretion in sentencing Dudley. Dudley did not present his ineffective assistance of counsel claim to the Minnesota Supreme Court in any way whatsoever, depriving the Minnesota Supreme Court of the opportunity to act on his claim.

The Court now turns to whether this claim is procedurally defaulted. Under Minnesota law, all matters raised on direct appeal or claims known but not raised are procedurally barred on subsequent review. *Knaffla*, 243 N.W.2d at 741; *McCall*, 114 F.3d

at 757. Dudley raised an ineffective assistance of counsel claim to the Minnesota Court of Appeals, but did not raise that claim when appealing further to the Minnesota Supreme Court. The ineffective assistance of counsel claim made in the Minnesota Court of Appeals generally mirrors the claim made in this habeas petition. There is nothing about Dudley's present ineffective assistance of counsel claim that prevented those claims from being brought previously. Under Minnesota's postconviction rules, Dudley would not be permitted to bring his current ineffective assistance of counsel claim. Therefore, Dudley is procedurally barred from bringing the claim in his federal habeas petition.

## B.  Abuse of Discretion, Medical Health, and Coercion Claims

Dudley raises three claims in his habeas petition that are difficult to disentangle from each other. For his abuse of discretion claim, Dudley effectively asserts that the state district judge violated his due process rights by accepting his guilty plea when he was incapable of understanding the charges against him or the proceedings; he was under the influence of an anti-depressant; and at some point he did not want to accept the State's plea offer. With the medical health claim, Dudley asserts his plea was invalid by reason of taking an anti-depressant. And for the coercion claim, Dudley asserts his attorney, the prosecutor, and the state district judge all conspired to take advantage of him because he was taking an anti-depressant.

In his *pro se* brief to the Minnesota Court of Appeals, Dudley raised a vague claim that his guilty plea was made under threat, duress, and coercion, thereby rendering it void, but he provided no support for this argument. Dudley also indicated that he "disclosed to the Court that [he] once suffered from mental challenges" and that he felt

12

his "mental state was not given any serious consideration . . . ." (ECF No. 17, Ex. 5, at 3). The Minnesota Court of Appeals rejected this argument without analysis. Even assuming Dudley properly raised a claim concerning his mental health and taking anti-depressants to the Minnesota Court of Appeals, he raised no such claims when appealing to the Minnesota Supreme Court.

Dudley has failed to exhaust state remedies on his abuse of discretion, medical health, and coercion claims because he did not "'fairly present' his claim[s] in each appropriate state court . . . ." *Baldwin*, 541 U.S. at 29. Dudley raised a single claim when appealing to the Minnesota Supreme Court: whether the state district judge abused her discretion in sentencing Dudley. Dudley did not present any claim related to his mental health or taking anti-depressants, or their impact on the proceedings, to the Minnesota Supreme Court in any way whatsoever, depriving the Minnesota Supreme Court of the opportunity to act on these claims.

The Court now turns to whether these claims are procedurally defaulted. Under Minnesota law, all matters raised on direct appeal or claims known but not raised are procedurally barred on subsequent review. *Knaffla*, 243 N.W.2d at 741; *McCall*, 114 F.3d at 757. On appeal, Dudley challenged the sentencing decision of the state district court and, in his *pro se* brief, he vaguely asserted his plea was a result of all actors involved— the prosecutor, his own attorney, and the state district judge—taking advantage of the fact Dudley was on an anti-depressant. There is nothing about Dudley's present claims that show they could not have been made on direct appeal or anything that prevented said claims from being brought. Under Minnesota's postconviction rules, Dudley would not

be permitted to bring his current abuse of discretion, medical health, and coercion claims. Therefore, Dudley is procedurally barred from bringing these claims in his federal habeas petition.

### C.  Miscarriage of Justice Standard

If a claim is procedurally defaulted, thereby barring review in a federal habeas corpus proceeding, the claim may still be considered if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Cause must be "something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753 (emphasis in original).

Dudley makes no argument that his present claims were barred in some way from being asserted on appeal. Nor does Dudley assert that any newly-discovered facts brought his present claims to light. In fact, Dudley made no argument at all in responding to the motion to dismiss which asserted his claims are procedurally defaulted. As detailed above, Dudley had an opportunity to raise claims before the Minnesota Court of Appeals and the Minnesota Supreme Court. While Dudley raised his ineffective assistance of counsel claim and, arguably, portions of his claims related to medical health, none of those claims were raised before the Minnesota Supreme Court. There is nothing in the record and no argument put forth by Dudley that point this Court to conclude that Dudley had cause for not raising these claims. Nor can the Court discern any prejudice resulting from the procedural default of Dudley's claims where the plea hearing transcript, (ECF

No. 17, Exs. 1, 2), and sentencing transcript, (ECF No. 17, Ex. 3), show routine hearings that match the description provided by the Minnesota Court of Appeals.[4] Accordingly, the Court concludes there would not be a fundamental miscarriage of justice in the application of Minnesota's procedural default bar to Dudley's claims. *See Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) ("Here, Murphy has shown neither cause and prejudice for the default, nor that a failure to consider the claim would result in a fundamental miscarriage of justice. The basis for this claim was available to counsel, and 'the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default.'") (quoting *Murray v. Carrier*, 477 U.S. 478, 486 (1986)).

### D. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Federal district courts may not grant a certificate of appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, the petitioner must show "that the issues are

---

[4]     At the plea hearing, Dudley indicated he understood his attorney would move for a downward departure but there was no agreement as to sentencing from the State and that he would not be allowed to withdraw his plea if the dispositional departure was not granted. (ECF No. 17, Ex. 2, at 2:8–3:20, 18:20–19:3). Dudley also indicated he understood that he could be sentenced to imprisonment for 144 months. (ECF No. 17, Ex. 2, at 9:21–10:19). Dudley also affirmed that he understood he was waving various rights, including his ability to bring "contested issues" before the court. (ECF No. 17, Ex. 2, at 7:13–8:15). Dudley indicated he had been treated by a psychiatrist because he suffers from anxiety and depression, but that he understood what he was doing and nobody had forced him to plead guilty. (ECF No. 17, Ex. 2, at 9:1–20).
        At the sentencing hearing, it is mentioned by both Dudley and the prosecutor that Dudley is seeing a psychologist, but there is no mention that any medication affects his judgment. (*See* ECF No. 17, Ex. 3, at 14:1–10, 16:14–17:2).

debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C. § 2253, the Court concludes that it is unlikely that reasonable jurists would find the question of whether to dismiss Dudley's petition debatable, or that some other court would decide this petition differently. The Court therefore recommends that a certificate of appealability not issue.

## III.    MOTION FOR TRANSCRIPTS

Dudley filed his Motion to Order Court Un-Transcribed Transcript of Plea Hearing and Sentencing. (ECF No. 21). In this motion, Dudley requests "the UN-TRANSCRIBED Transcripts from the court reporter of the entire hearing that occurred on August 1st, 2013" and "all previous proceedings from the ending of this file from November 8th, 2013 to date." (ECF No. 21) (emphasis in original). Dudley and Respondent have each provided the Court copies of the plea and sentencing hearings that took place in Dudley's state criminal proceeding. Dudley, however, provided an annotated version that asserts portions of the plea hearing were not transcribed by the court reporter or were altered in some manner. (*See* ECF No. 1-2, at 1–20, *passim*; ECF No. 2, at 3–31; *see also* ECF Nos. 5-1, 8). From Dudley's notes on one of the submitted transcripts, it appears he believes that he has not received an original transcript because it is entitled "Amended Transcript Plea Hearing." (ECF No. 5-1, at 1) ("Refuses to send Original + Untranscribed, Also Motion of Discovery. This cannot be original by being AMENDED!!!!").

Dudley presents no factual support for his assertion that the transcripts were altered and, upon reading the transcripts, this Court finds nothing amiss with the transcripts. Moreover, the transcripts are immaterial to Dudley's present habeas petition given that he has clearly failed to exhaust his claims in Minnesota courts. Given that the Court already has several copies of each transcript, that there is no factual support for the argument that the transcripts are incorrect or altered in any way, and the conclusion above that Dudley has failed to exhaust his claims, his motion for further transcripts lacks merit.

## IV.    MOTION TO STAY

Finally, Dudley filed a letter that asks the Court to "put a hold on the Habeous [sic] Corpus Petition due to the process of having my Post-Conviction Petition being looked over." (ECF No. 23). Dudley has asked for a stay of this proceeding more than seven months after his response to the motion to dismiss was due. There is no argument in support of such a request and the Court can divine of no reason to stay this proceeding at this time. As concluded above, Dudley has failed to exhaust his claims in state court and those claims are now procedurally barred. A stay would not further the interests of justice.

## V.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus, (ECF No. 15), be **GRANTED**, the Petition under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody, (ECF No. 1), be **DISMISSED WITH PREJUDICE**, and a certificate of appealability not issue.

2.     Dudley's Motion to Order Court Un-Transcribed Transcript of Plea Hearing and Sentencing, (ECF No. 21), be **DENIED**.

3.     Dudley's Motion to Stay, (ECF No. 23), be **DENIED**.

Date: January 25, 2017                              *s/ Tony N. Leung*
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   District of Minnesota

                                                   *Dudley v. State of Minnesota*
                                                   Case No. 16-cv-446 (JRT/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.